**STATE ex COLUMBUS (City), Relator v. THATCHER, Auditor et, Respondents**

Ohio Appeals, Second District, Franklin County

No. 3246. Decided February 4, 1941.

John L. Davies, city attorney, Columbus; E. W. McCormick, 1st asst. city attorney, Columbus; Charles R. Petree, 2nd asst. city attorney, Columbus, for relator.

Ralph J. Bartlett, prosecuting attorney, Columbus; David B. Sharp, 1st asst. pros. attorney, Columbus, and Robert P. Barnhart, asst. pros. attorney, Columbus, for respondents.

**OPINION**

By HORNBECK, P. J.

This is an action in mandamus wherein the plaintiff seeks an order of the court requiring defendant, the auditor of

Franklin County, to issue his warrant and the treasurer to pay the same for $175,138.94, the amount claimed to be due and payable to the relator as its distributive share, as one of the relief areas in Franklin County, in surplus monies in said county arising by reason of receipts from excise tax during the years, 1937 to 1940, inclusive.

The issues are raised upon a petition and joint answer and the facts not admitted by the pleadings are presented by an agreed statement of facts from which it appears, that on June 1, 1932, Franklin County issued public utility excise bonds in the sum of $601,600.00 for emergency poor relief by authority of amended Senate Bill No. 4, 114 O. L. (part 2) 17, which act was effective April 6, 1932. The proceeds from the sale of these bonds were distributed and are not in controversy in this case.

At the time of the issuance of these bonds and to June 13, 1933, poor relief was administered in the city of Columbus by the Division of Relief under the supervision of the mayor.

From June 13, 1933, to January 28, 1934, Franklin County Relief Committee served under the County Commissioners and funds for poor relief were apportioned by the State Relief Commission to the cities, townships, and county in accordance with a budget setting forth the needs of various subdivisions and money received was distributed by the county in accordance with the allocations of the State Relief Commission.

From January 29, 1934, to April 1, 1935, city and county relief was centralized under the State Relief Commission of Ohio and monies were disbursed throughout the county by the Franklin County Relief Administration, a division of the county government set up and under the control of the Franklin County Commissioners.

From April 1, 1935, to November 30, 1935, the Federal Emergency Relief Administration administered relief throughout the county.

From December 1, 1935, to May 1, 1937, the Franklin County Relief Administration, a division of the county government operating under the County Commissioners, reassumed and continued the administration of poor relief in the county.

From May 1, 1937, to July 1, 1939, the city of Columbus and the other cities in the county and the townships assumed the responsibility of dispensing temporary relief in their respective subdivisions and the commissioners assumed responsibility for permanent relief.

Since July 1, 1939, "Poor Relief" as defined in §3391 GC, has been administered in Franklin County outside of the corporate limits of cities by the Board of County Commissioners

and within the corporate limits of Columbus and the other cities of the county by the proper authorities of said cities.

On September 1, 1935, Franklin County issued public utility excise bonds for emergency poor relief in the amount of $745,000.00 by authority of House Bill No. 501, 116 O. L., 571, effective June 10, 1935, and on December 1, 1936, said county under authority of House Bill No. 501 issued public utility excise bonds for emergency poor relief in the amount of $204,000. The proceeds of the sale of these bonds is not in controversy.

From 1932 to September 1937, principal and interest on said bonds were paid and there was a net surplus of $27,935.53 made up as follows:

| S. B. No. 4 | Received | Paid | | Surplus-Def. |
|---|---|---|---|---|
| 1932 | $ 29,865.96 | $ 9,024.00 | + | $20,841.96 |
| 1933 | 15,760.97 | 36,096.00 | — | 20,335.03 |
| 1934 | 125,242.38 | 139,498.00 | — | 14,255.62 |
| 1935 | 129,149.82 | 139,310.00 | — | 10,160.18 |
| 1936 | 142,555.74 | 139,320.00 | + | 3,235.74 |
| 1937 | 143,229.93 | 138,910.00 | +· | 4,319.93 |
| | | Total Deficit | | $16,353.20 |

| H. B. No. 501 | | | | |
|---|---|---|---|---|
| 1935 | $ 22,628.00 | $ | + | $22,628.00 |
| 1936 | 60,180.58 | 82,812.50 | — | 22,631.65 |
| 1937 | 160,267.42 | 115,974.77 | + | 44,292.65 |

| | | | | |
|---|---|---|---|---|
| Total Surplus H. B. No. 501 | (1932-37) | | | $44,288.73 |
| Total Deficit S. B. No. 4 | (1932-37) | | | 16,353.20 |
| Net Total Surplus | (1932-37) | | | $27,935.53 |

From February, 1938, to September, 1938, inclusive, a surplus accumulated from excise tax in the sum of $85,063.55, as follows:

| | S. B. No. 4 | H. B. No. 5 | Total |
|---|---|---|---|
| Received | $152,051.48 | $184,533.06 | $336,584.54 |
| Paid Out | 139,050.00 | 112,941.25 | 251,991.25 |
| Difference | $ 13,001.48 | $ 71,591.81 | $ 84,593.29 |
| Adjustment for 1937 | — 9,431.13 | + 9,901.39 | + 470.26 |
| | $ 3,570.35 | $ 81,493.20 | $ 85,063.55 |

From Ferbuary, 1939, to September, 1939, inclusive, the county received funds from the state from excise tax from which there was left a surplus accumulating during the year 1939 of $42,797.59 and in the year 1940 receipts by the county from the state from excise tax a sum, which, after payment of principal and interest on bonds, left a surplus in the sum of $59,077.57. The total surplus accumulating from the years 1932 to 1940, inclusive, was $214,403.98.

During the period encompassed by the transactions involved in this case there have been enacted at least seventeen separate and distinct bills which affect the questions here presented. The issues are almost impossible of solution because of the changing method of and controlling authority for distributing poor relief, the mass and prolixity of legislation affecting the collection, disbursement and ultimate disposition of the funds raised by bond issues and from excise tax.

The first act which we are required to consider is Amended Senate Bill No. 4, 114 O. L. (Part 2), 17-23. In section 2 of this act "poor relief" is defined as it relates to county, township, and municipal corporations. Section 3 provides for the issuance of bonds for the relief of the poor and fixes the maturity of the bonds and defines their form and requisites. Section 4 levies an excise tax on certain public utilities for the years 1932 to 1937, inclusive. Section 5 provides for the allocation of the funds collected from the excise taxes levied under Section 4, and at the end of the section this language is found:

"The fractional part of the total sum to be produced by said tax levy, indicated by said average ratio, shall be allocated to the respective counties, and all revenues accruing to the county poor relief excise fund from the date this act takes effect by law distributable to the counties are hereby appropriated for that purpose to be distributed to and expended by such counties in accordance with law."

It then becomes necessary to determine what distribution of this fund is provided, "in accordance with law."

It should be observed, that Sections 4, 5, and 6, which we later consider, all relate to the fund created by the proceeds of excise tax which is separate and apart from the fund created by the sale of the bonds as provided in the act. The fund, known as the "Emergency Relief Fund," is treated particularly in Sections 2, 8, and 9 of the act. The fund specifically designated in Section 5 as the "County Poor Relief Excise Fund" is

produced by proceeds from excise tax. As mentioned in Sec-. .tion 5, "County Poor Relief Excise Fund" refers to such fund in the hands of the Auditor of State, but it is the same fund which is designated as a "special fund" in Section 6.

Section 6 defines how the proceeds of the excise tax shall be distributed as follows:

"On or before the 1th day of February of each year, the Auditor of State shall transmit to the County Auditor of each county, a certificate of the amount of such fund (that is to say the county poor relief excise fund) standing to the credit of such county, and shall draw warrant for such amount upon the Treasurer of State, in favor of the Treasurer of such county, and forward such warrant to the County Auditor. Such monies shall be held in trust in a special fund of the county and applied solely to the payment of the principal of and interest on the bonds issued under Section 3 of this act, or if they exceed the amount required for such purposes **to other poor relief purposes within the county as defined in this act,** or if such monies exceed the amount required for the aforesaid. purposes the same shall be paid into the sinking fund of the county and used for the retirement of bonds of the county."

Section 9 provides that after the State Relief Commission has approved the budget of the county or city for relief expenditures and prior to March 1, 1933:

"The County Commissioners of any county shall, from time to time, distribute such portion of said fund to any or all of the cities (whether charter cities or otherwise) and townships or such county according to their relative needs for poor relief as determined by such county and as set out in such approved budget, * * *."

The fund here referred to is the "Emergency Relief Fund."

If the surplus of $27,465.27 in the hands of the county accumulated prior to September 1937 is to be distributed under Senate Bill No. 4, then it must be done by virtue of Section 6 of the act and under that portion thereof which we have emphasized, namely, "to other poor relief purposes within the county as defined in this act."

It is obvious that poor relief purposes within the county might include poor relief disbursed collectively by the county, the townships, and the municipal corporations. On the other hand it may mean poor relief as disbursed only by the county,

as defined in Section 2. If the language employed in Section 6 had been, "to other poor relief purposes as in the **case of a county** as defined in this act," we would have no uncertainty.

It is our judgment that, "other poor relief purposes within the county as defined in this act," means poor relief "in the case of a county," viz., that statutory poor relief defined in Section 2, which is disbursed only by the county. This con-·clusion is strengthened because of the fact that nowhere in the Act is any formula set up upon which proportionate distribution can be made to the city of the funds mentioned in Section 6.

Sections 3, 7, 8 and 9 of Amended Senate Bill No. 4 are amended in Senate Bill No. 63, 115 O. L. .(Part 1), 29, effective February 28, 1933. Sections 3, 7, and 8 do not affect the question which we now consider. Section 9 recognizes the separate entity of the two funds, "Emergency Relief Fund" and "County Poor Relief Excise Fund," and makes provision for certain expenditures to be made from either or both.

The next act in chronological order is House Bill No. 501, 116 O. L., 571, 579, effective June 10, 1935, under which all bonds were issued, except those issued in the year 1932. This act in Section 1, undertakes to coordinate and correlate state emergency poor relief work with the Federal Administration, vests powers and duties in the County Commissioners with the approval of the Director of Finance of the State of Ohio.

Section 2 provides for the issuance of bonds by a county for poor relief based upon an estimate of the amount which will probably be allocated to such county from public utility excise taxes and provides that the proceeds of the bonds shall be paid in accordance with the provisions of Section 2, amended bill No. 4 and its amendments.

Section 3 is an amendment to §5491 GC.

After indicating the purpose for which the funds produced under this section are to be expended and the amount of excise tax to be levied under §§5474, 5475, 5483, 5485, 5486, 5487, and 5487-1 GC., it is provided that during the years 1935 to 1943, inclusive, the funds produced, "shall be allocated to the 'county poor relief excise fund,' and thereafter shall be allocated **to the general fund of each county for county statutory relief and welfare purposes,** and shall be allocated to each county in the ratio set out." (Emphasis ours.)

"Annually the auditor of state shall draw voucher and warrant payable to the County Treasurer of each county for

an amount equal to the county's share, as hereinbefore determined

"Monies received into the county treasury in accordance with the provisions of this act shall be credited to the county general fund, and shall be expended only for county statutory welfare and relief purposes, as determined by the county budget commission."

. By the terms of the section all monies produced by virtue of §5491 GC, would by annual payments from the Auditor of State go to the County Treasurer. "Monies received into the county treasury in accordance with the provision of the act" can mean nothing less than all monies received into the county treasury not only for the years 1935 to 1943, inclusive, but thereafter unless prevented or changed by subsequent legislation, and as to these monies it is required that they be expended only for county statutory welfare and relief purposes which cannot contemplate that any of these funds would pass to the city.

Section 4 provides that the portion of the funds collected under the provisions of §§5474 et seq., as set out in §5491 GC., and allocated under the provisions of that section during the years 1935 to 1943, both inclusive, to " 'emergency poor relief,' together with any and all other revenues required by law to be credited to the fund hereby created, shall be credited to a fund to be known as the 'county poor relief fund.' "

It should be noted that in §5491, as amended in the Act, there is no provision for allocation to emergency poor relief of the funds produced by the sections of the code designated, and the reason for the employment of such language in Section 4 is not to be found. The section proceeds:

"The moneys therein arising from funds collected under the provisions of Section 5474, et seq., shall constitute one division of said fund and shall be allocated to all counties in the state by" a formula set out, the remaining one-half distributed by another formula, with the further provision that "The fractional part of the total sum produced by the crediting of such other moneys to the county poor relief excise tax fund, indicated by said ratios shall be allocated to the respective counties. All revenues accruing to the county poor relief excise fund from the date this act takes effect, by law distributable to the counties, are hereby appropriated for that purpose to be distributed to, and expended by, such counties in accordance with the law."

We have extreme difficulty in giving meaning to amended §5491 GC, in its relation to Section 4 of the Act. The section, as amended in the major part thereof, apparently contemplates one distribution of monies received from excise tax during the years 1935 to 1943, inclusive, and a different distribution thereafter, but the language employed at the end thereof will permit of no construction, except that which is based upon a distribution of all the monies received into the county treasury under the amendment. Section 4 then means that all the funds produced by amended §5491, together with all other funds that may be produced in contemplation of the section, shall in the hands of the state be credited to a fund known as the, "County Poor Relief Excise Fund", and that all of the funds received under Section 4 shall be divided according to the formulas, and that all of these revenues accruing to that fund shall be distributable to the counties and expended by them in accordance with law. The only provision for distribution made in this Act is that which is found at the end of amended §5491, namely, that it shall be credited to the county general fund and expended only for county statutory welfare and relief purposes. If this is not the distribution meant by Section 4, when the only prior provision for distribution which we find is that appearing in amended Senate Bill No. 4, Section 6, to which we have heretofore alluded. Neither of these provisions will permit of any distribution to the city of the funds therein considered.

Am. S. B. 377, 116 O. L. (Pt. 2), p. 31, effective December 7, 1935, is the first amendment to House Bill 501, and relates only to Section 4 of said Act. There is nothing of assistance in the amendment. The provision as to the distribution of the funds received by the county from the poor relief excise fund is the same as in Section 4 of H. B. No. 501 namely, "in accordance with law."

The next act which we consider is H. B. No. 663, 116 O. L. (Pt. 2), p. 240, effective July 22, 1936. This act created a state relief commission, fixed the number of its members and their tenure of office, salaries, etc. The pertinent part of the act is found in Section 4:

"In order to qualify for, and be permitted to receive any advances, distributions or allocations herein provided, each county shall, upon the effective date of this act, transfer the unexpended or unencumbered balance of any moneys in its 'emergency poor relief fund', or in its 'county poor relief excise fund', to the within created 'county relief fund', and, there-

after, all such moneys shall be used for poor relief according to the provisions of this act and not otherwise."

It further provides that:

"Such counties as hereafter issue bonds or notes under the provisions of section 2 of House Bill No. 501, which shall hereafter receive their annual distributive share of said excise tax in accordance with section 4 of House Bill No. 501, passed May 23, 1935, and approved June 5, 1935, as amended by Amended Senate Bill No. 377, passed December 5, 1935, shall, upon receipt of the moneys from the sale of such bonds or notes or from the said tax, pay said moneys to the within created and defined 'county relief fund' and the same shall be used according to the provisions of this act and not otherwise."

The Act further provides that, wherever in any prior legislation on the subject the term, "emergency poor relief fund," or the term, "county poor relief excise fund," is employed or set forth, that such act shall be deemed to be amended, altered, revised, and the term, "county relief fund," shall be substituted therefor, under which title it is thereafter to be known and regarded.

It is significant that, although this act is extended and comprehensive and provides as we have heretofore quoted, that the funds with which Section 4 treats shall be used according to the provisions of the Act and not otherwise, there is no formula, method, or plan set forth upon which distribution can be based. Therefore, the method of such distribution must be found elsewhere, and there is nothing in the former legislation upon which the funds can be allocated to the city.

Amended Substitute House Bill No. 65, 117 O. L., page 13, et seq., effective February 11, 1937, bears the caption:

"To establish a state relief commission, to provide for the administration thereof and to appropriate and provide for the distribution of moneys in the state treasury for poor relief purposes, and to declare an emergency."

Section 4 of the Act is to all intents and purposes the same as Sec. 4 of H. B. 663 and Am. S. B. 377. It provides that, in order to qualify for and be permitted to receive any moneys therein provided, each county, upon the effective date of this Act, shall transfer any unexpended or any unencumbered balance in moneys in its "emergency poor relief fund" or in its "county poor relief excise fund" to the within created "county

relief fund" and, thereafter, all such moneys shall be used for poor relief according to the provisions of this Act, and not otherwise; and makes like provision for moneys received from the issue of bonds or notes under the provisions of Section 2 of House Bill No. 501 or its amendments.

It further provides that all funds created by such acts and carried either in the "emergency poor relief fund" or the "county poor relief excise fund" shall be merged and thereafter carried in the "county relief fund," and that all such sums not necessary to meet existing obligations against said funds shall thenceforth be employed, spent and used for those purposes only and as defined and set forth in this Act.

· In Section 11(b) it is provided that, "such moneys," that is to say, moneys advanced by allocation or distribution from the state relief commission to the counties, "shall constitute, in the county treasury, a separate fund, known as the 'county relief fund,' which shall be expended only for the administration and provision of poor relief as defined by this act, by warrant of the county auditor on authority of vouchers of the county commissioners." The defendants in their briefs say that they transferred the sum of $27,465.27 surplus funds arising from House Bill 501 to the county relief fund of date April 14, 1937, by virtue of the terms of Am. Sub. H. B. 65. This is the last pertinent legislation prior to the transfer of said balance, and there is no question that this net surplus was properly placed to the credit of the "county relief fund," and that it should have been used for the purposes defined in the act and for no other, but we look in vain for any provision whatever in this act defining the method of distribution of these funds or the proportion in which they shall be distributed to county, city or township. Certainly there is no formula set up whereby any proportionate share of these surplus funds is to be distributed to the city.

We have now considered all of the legislation effective before the first transfer under consideration, namely, that of April 14, 1937, in the sum of $27,465.27.

The second distribution of funds by the county commissioners was under resolution of date January 6, 1940, and related to the transfer of $127,861.14 from the sinking fund to the general expense fund. The resolution recites that, whereas the fund under consideration was received from Public Utilities excise taxes under §5491 GC, which was in excess of the amount needed to pay principal and interest for the year 1939 on bonds issued in anticipation of the collection of said taxes, and that the attorney general having by his opinion No. 1467 ruled that

such excess may be used immediately for the purposes as provided by law, and whereas, the prosecuting attorney has advised the county auditor that the funds under consideration became vested in Franklin County prior to the enactment of H. B. No. 675 (93rd General Assembly), and are to be used for the purposes provided by House Bill No. 501 (91st General Assembly), it is, therefore resolved that the sum heretofore set forth be transferred from the sinking fund of the county to the county general fund for the purpose of providing for statutory welfare purposes of aid to needy children, aid to crippled children, to needy blind and soldiers' relief.

The first transfer was in the sum of $27,465.27, which, together with the above transfer, makes a total of $155,326.41. The total surplus received by the county, according to the agreed statement of facts, up to and including the year 1940, was the sum of $214,403.98. Of this total sum, there remains in the hands of the commissioners unaffected by the resolutions the sum of $59,077.57.

The next legislation succeeding the first distribution is Am. H. B. No. 737, 117 Ohio Laws, 720, effective December 30, 1937. Section 1 provides that balances in the county relief fund created by Section 4 of Amended Substitute House Bill No. 65, may be expended by counties for purposes therein defined or related to relief, and that counties may expend for relief purposes funds arising from the selective sales tax and/or the utilities excise tax collected under Amended Senate Bill No. 4, whether from bonds issued or authorized or the proceeds therefrom or in cash from the proceeds of said tax, and that any money received in the future by any county from the above named tax or taxes shall be expended for relief purposes in accordance with the provisions of the act. It is then specifically provided:

"In all counties where poor relief is furnished by the respective municipalities and townships, rather than by county commissioners on a county-wide basis, the county commissioners shall apportion the proceeds thereof among cities, townships and county in direct proportion to the number of relief cases handled by each during the month immediately preceding distribution."

We are unable to find in the pleadings or in the agreed statement of facts that any surplus here under consideration accrued between the date of the first distribution, namely, April 14, 1937, and December 30, 1937 the effective date of House

Bill No. 737. It is stipulated, however, that in the year 1938 a surplus was accumulated in the sum of $85,063.55.

We are not informed as to what proportion of this surplus of 1938 came in that year from the sources defined in Amended House Bill No. 737, but the act is limited to balances in the county relief fund created by Section 4 of Am. H. B. No. 65, and funds arising from the selective sales tax or utility excise tax under Am. S. B. No. 4.

Inasmuch as it is stipulated that from May 1, 1937, to July 1, 1939, the city of Columbus and other cities in the counties and townships assumed the responsibility of dispensing temporary relief in their respective subdivisions, and the commissioners assumed responsibility for permanent relief, all funds affected by House Bill No. 737 should be distributed in accord with the last paragraph of Section 1 of this Act.

Am. Sub. H. B. 744, 117 O. L., page 723 is captioned: "To amend §5546-18 GC, relative to appropriations from the receipts of the sales tax for poor relief purposes during the year 1938, and to declare an emergency." Section 2, which is an amendment to §5546-18a GC, provides:

"All revenues received from public utility taxes, the admission tax, the malt and wort tax, the beverage tax and the sales tax, and allocated to the respective counties for poor relief purposes, and not expended, required or encumbered for such purposes shall be paid into the county general revenue fund."

We find no authority in this Act for the transfer of any of the funds under consideration into the county general revenue fund because all such funds obviously were required for poor relief purposes.

Am. S. B. No. 465, 117 O. L., 877, effective July 11, 1938, is a comprehensive act providing for the administration of poor relief in the state, establishing a state relief director, declaring his powers and duties and declaring an emergency, but we find nothing in it of benefit on the questions under consideration.

Amended House Bill No. 675, effective June 9, 1939, §3391-2 GC, is a comprehensive act, but we refer only to sub-paragraph 9, which provides:

"The moneys received by county under any law other than this act providing for the distribution of state funds to counties for poor relief shall be paid into the county treasury to the credit of the proper funds therein; but in counties containing

two or more local relief areas, or part or parts thereof, the proportional share of the county relief area as determined by the provisions of this act shall be paid into the treasury of the county relief area, and the proportional shares of the cities shall be distributed and paid by the county treasurer on the order of the county auditor to the treasurer of each city entitled thereto. Such distribution shall be made in proportion to the obligations incurred for poor relief in the respective local relief areas, and part or parts thereof in the county, during the calendar month next preceding the receipt of such moneys."

Herein is set out the method and manner of distribution of the funds considered in sub-paragraph 9 and the proportion in which they shall be distributed, and it is contemplated that the cities, including Columbus, which is now and was when the Act was effective a local relief area, shall share as provided in said sub-paragraph. This legislation was effective June 6, 1939, is all-embracing and would include such part of the surplus under consideration in this case as accumulated since the date of the act, but not before, subject only to that portion of any surplus represented by the funds considered by Am. H. B. 737, 117 O. L., 720, which shall be distributed as therein provided and as hereinbefore indicated.

The only funds in the surplus under consideration which will be affected by §3391-2, sub-paragraph 9, are those which arose subsequent to the effective date of the Act. This construction in our judgment is not in conflict with the opinion of the Attorney General, No. 1467, Volume III, Opinions of the Attorney General, page 2147, 1939. This opinion, among other things, holds that excess moneys received for poor relief purposes within the county under annual allocations from the State thereto under House Bill No. 501 and amendments and H. B. 572 and amendments, must be distributed among the local poor relief areas within the geographical limits of such county in proportion to the obligations incurred by each of said areas for the preceding month as provided in §3391-2 GC. There is nothing in this opinion to indicate that it gives retroactive effect to sub-paragraph 9, and we perceive no good reason why it should be done, nor does anything appear in the act evincing intent that it have retroactive effect.

The case of **City of Cleveland v Zangerle, 127 Oh St 91,** holds that the funds are vested in the county as of the date when received. The situation which brought about the necessity for opinion, No. 1467, of the Attorney General was not that

550

the funds had not reached the counties as contemplated by the acts under consideration, but that they were frozen there and that they should be distributed annually instead of at the time of the maturity of the bonds, the payment of which they secured.

To epitomize, we hold that the city is entitled to no part of the distribution of $27,465.27, the subject of the resolution of the county commissioners of date April 14, 1937. That any surplus arising in the county relief fund after December 30, 1937, and prior to June 9, 1939, defined in Amended H. B. No. 737 and Section 4 of Am. H. B. No. 65 and arising from the selective sales tax or utility tax under Am. S. B. No. 4, shall be apportioned, as provided in Section 1 of Am. H. B. 737. The city is to receive such part of said proceeds "in direct proportion to the number of relief cases handled by it in relation to the total number of cases handled during the month immediately preceding distribution."

That portion of the surplus which has been received on distribution by the county since June 9, 1939, the effective date of Am. H. B. No. 675 is to be distributed in accordance with sub-paragraph 9 of said Am. H. B.

Judgment accordingly.

GEIGER and BARNES, JJ., concur.